UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMIAN CORTEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROL A. MICI, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 23-CV-10051-AK |

## MEMORANDUM AND ORDER

**A. KELLEY, D.J.**

Plaintiff Damian Cortez, who is representing himself in this matter, brings this action under 42 U.S.C. § 1983 ("§ 1983") in which he alleges that eleven employees of the Massachusetts Department of Correction working at MCI Cedar Junction violated his constitutional rights in 2020 and 2021.[1] Cortez's claims include those for inadequate access to the law library, unlawful interference with his legal mail, failure to provide a religious diet, interference with communications with his attorney, and failure to adequately respond to his grievances. Cortez's pleading consists of a 42-page Complaint and 200 pages of exhibits.

Although Cortez paid the $402 filing fee, his Complaint is subject to a preliminary review by the Court before requiring the Defendants to respond. Under 28 U.S.C. 1915A, a court "shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer of employee of a governmental entity." 28 U.S.C. 1915A(a). Upon this review, "the court shall identify cognizable claims or dismiss the complaint, or any

---

[1] Cortez is now in the custody of the Bureau of Prisons.

portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a Defendant who is immune from such relief." 28 U.S.C. 1915A(b).

For the reasons set forth below, the Court concludes that, with the exception of two claims, the Complaint fails to state a claim upon which relief may be granted.

## I. LEGAL STANDARD

To state a claim for relief, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that a plaintiff's allegations must contain "enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests,'" Silverstrand Invs. v. AMAG Pharm., Inc., 707 F.3d 95, 101 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011)) (alteration in original), or, in other words, the statement of the claim "must 'at least set forth minimal facts as to who did what to whom, when, where, and why,'" Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006) (quoting Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004)).

Further, the complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is not as onerous as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

In the context of a claim under § 1983, "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005). In other words, a commissioner, superintendent, or other supervisory employer cannot be held liable under § 1983 based solely on the misconduct of a subordinate; the supervisor must have had some form of direct involvement in the alleged misconduct. See id.; Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 536 (1st Cir. 2011) ("[N]ot every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." (internal quotation marks omitted)); Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009) ("[A] warden's general responsibility for supervising a prison is insufficient to establish personal liability."). A supervisor's direct involvement includes "personally participating in the constitutional violation, direct[ing] their subordinates to act unlawfully, or know[ing] their subordinates will act unlawfully but fail to stop them." Bowens v. Superintendent of Miami S. Beach Police Dep't, 557 Fed. App'x 857, 861 (11th Cir. 2014).[2] Thus, to state a viable § 1983 claim, the specific factual content required by Rule 8(a)(2) must not only identify, in a non-conclusory fashion, the wrongful conduct of a defendant, but it must also permit the court to reasonably infer that the defendant was directly involved in a constitutional violation.

## II. DISCUSSION

Cortez brings this action against the following administrators and staff members of MCI Cedar Junction: Douglas W. DeMoura (Superintendent); Jodi Hockert-Lotz (Assistant Superintendent); Douglas Bower (Deputy Superintendent of Operations): Mr. Robichaud

---

[2] See also, e.g., Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998) ("If the warden were aware of 'a systematic lapse in enforcement' of a policy critical to ensuring inmate safety, his 'failure to enforce the policy' could violate the Eighth Amendment." (quoting Goka v. Bobbitt, 862 F.2d 646, 652 (7th Cir. 1988))).

3

(Sergeant); Mr. McGlyn (Sergeant); Mark Dolloff (Correction Officer); Mr. Dumernay (Inmate Grievance Coordinator and IPS Officer); Stephen Burnett (Deputy of Operations); Tammy Duarte (Director of Treatment); Jenn Ladd (Supervisor of (CPO) Case Managers); and Nancy Hughes (Librarian and Law Librarian).  Cortez also names Carol A. Mici, the Commissioner of the Massachusetts Department of Correction, as a Defendant.

The Court addresses each claim under the same titles Cortez uses in the Complaint.

A.      Law Library Violations (¶¶ 15-29)

According to Cortez, law librarian Nancy Hughes refused to schedule him for visits to the library on the ground that Cortez had failed to attend two earlier scheduled visits.  Cortez alleges that he stated to Hughes that "it is [his] right to due process and to access to the courts to attend [the] law library, and [he has] the free will to change [his] mind anytime and no matter what [he is] to be scheduled for law library at the submission of any and all requests to attend [the] law library."  Compl. at ¶ 15.  Cortez also alleges that correction officer Mark Dolloff prevented him from attending scheduled visits to the law library.  Cortez submitted grievances about his lack of access to the law library, but they were denied.

Cortez also complains of the lack of adequate technology at the law library.  He alleges that, although there are several computers in the law library, only one computer "is functioning to view discovery," but even then, that computer "is barely working [and] has out of date software which prohibits the plaintiff from viewing or accessing any and all of the discovery given to the plaintiff on behalf of" the United States Attorney.  Id. at ¶¶ 19, 21.

 "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law."  Bounds v.

4

Smith, 430 U.S. 817, 828 (1977) (emphasis added).  "The appointment of counsel can be a valid means of satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts."  Bourdon v. Loughren, 386 F.3d 88, 94 (2d Cir. 2004); see also Carabello v. Federal Bureau of Prisons, 124 Fed. App'x 284, 285 (5th Cir. 2005) (per curiam) ("Because [the plaintiff] had court-appointed counsel on appeal, he had no constitutional right of access to a law library in preparing his defense."); United States v. Wilson, 690 F.2d 1267, 1272 (9th Cir. 1982) ("The offer of court-appointed counsel to represent [the defendant] satisfied the Fifth Amendment obligation to provide meaningful access to the courts.").  Because Cortez was represented by appointed counsel in the criminal prosecution against him, see United States v. Cortez, Crim. No. 20-cr-10197 (D. Mass.), he has failed to state a claim for denial of access to the courts with regard to the criminal proceeding.

Further, where a prisoner does not have the option of being represented by appointed counsel, the prisoner's right of access to the courts "does not require states to give inmates unlimited access to a law library."  Rudnick v. Raemisch, 731 Fed. App'x 753, 755 (10th Cir. 2018) (quoting Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (per curiam)).  Moreover, to assert a claim for denial of access to the courts, a prisoner must allege that the failure to provide the legal resources required in Bounds resulted in actual injury.  See Lewis v. Casey, 518 U.S. 343, 351 (1996) ("Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").  Cortez does not allege that limitations on access to the prison's law library and/or sufficient access to functioning computers resulted in actual injury with regard to a proceeding other than the criminal prosecution against him.

Accordingly, this claim shall be **DISMISSED**.

### B.    Legal Mail Violations (¶¶ 30-33)

Cortez alleges that Dumernay interfered with this legal mail and that DeMoura and Hockert-Lotz "ignored" his concerns on this topic. Compl. at ¶ 33. Although the Court will allow this claim to go forward as to Dumernay, Cortez has not alleged sufficient facts showing that DeMoura and Hockert-Lotz directly participated in any constitutional violation committed by Dumernay with regard to Cortez's legal mail.

Accordingly, this claim shall be **DISMISSED** as to DeMoura and Hockert-Lotz.

### C.    Religious Diet Violations/Deliberate Indifferences (¶¶ 34-36)

Cortez claims that "[o]n or about September 15, 2020 and throughout [his] stay at MCI Cedar Junction[,] he was maliciously and purposely given the same meals by some of the defendants," including Dolloff, Robichaud, and McGlyn. Compl. at ¶ 34. Cortez alleges that these three Defendants "purposely and maliciously" "forced [him] to wait up to an hour or longer . . . for his meals while the rest of the entire inmate population received their meals at the scheduled breakfast, lunch, and dinner times." Id. Cortez further alleges that he was "given incomplete meals denying him of the 2600-3000 daily average calorie intake required by law" and that Dolloff, using very vulgar and derogatory language, told Cortez that didn't care about Cortez's kosher meals. Id. Cortez represents that he addressed these issues with DeMoura, Hockert-Lotz, Robichaud, McGlyn, Dolloff, Burnett, and Duarte, without success.

Cortez also complains that he "ordered commissary on a weekly basis in the maximum amount" due to the aforementioned conduct of Dolloff, Robichaud, and McGlyn. Id. at ¶ 36. He further claims that he "would receive meals with mice feces on the packaging provided to the plaintiff by the defendants mentioned throughout this claim." Id. Cortez claims that he

"requested a kosher meal menu schedule in which [he] had to request numerous times in which the Defendants mentioned throughout this claim took several months to provide it to [him]." Id. The "defendants mentioned through this complaint" also "provided [Cortez] with expired and rotten foods items as well as meals." Id.

As pled, this claim fails to state a basis for relief. The alleged misconduct of Dolloff, Robichaud, and McGlyn is troubling, but the Court cannot reasonably infer that their alleged misconduct rose to the level of an infringement on his religious exercise or cruel and unusual punishment. Because Cortez does not identify the frequency at which the menu did not provide him a sufficient daily calorie intake, the Court cannot reasonably include that any Defendant was "deliberately indifferent" in this regard. Further, Cortez's general allegations that he received "meals with mice feces on the packaging" and "expired and rotten foods items as well as meals," do not permit the Court to reasonably infer that any Defendant inflicted cruel and unusual punishment.

Accordingly, this claim shall be **DISMISSED**.

D.     **Attorney Client Communications Violations (¶¶ 37-38)**

The Court will require Ladd to respond to Cortez's claim that she deliberately prevented Cortez from communicating with his attorney. Notwithstanding, to the extent that Cortez's claim is based on the premise that "there should not be a time limit or any restrictions of attorney client communications," Compl. at ¶ 37, he fails to state a claim upon which relief may be granted. A correctional institution may place reasonable restrictions on the amount of time a prisoner can meet with his criminal defense attorney.

E.      **Grievance Procedure Violations (¶¶ 39-43)**

Cortez's claim concerning defects in the prison grievance system and the Defendants' alleged failure to comply with state regulations concerning prison grievance procedures fails to state a claim upon which relief can be granted.  A prisoner does not have a constitutional right to a particular grievance procedure or any grievance procedure at all.  See, e.g., Owens v. Evans, 878 F.3d 599, 563 (7th Cir. 2017) (holding that prison officials' "failure to follow a state's inmate grievance procedures in not a federal due-process violation"); Stringer v. Bureau of Prisons, 145 Fed. App'x 751, 753 (3d Cir. 2005) (holding that prison officials' "alleged failure to process or respond to [a prisoner]'s grievances did not violate his rights to due process and is not actionable").

Accordingly, this claim will be **DISMISSED**.

F.      **Slander/Defamation of Character (¶¶ 44-46)**

In the claim labelled "Slander/Defamation of Character," Cortez alleges that Dolloff made false disciplinary reports against him in retaliation for Cortez filing grievances concerning Dolloff's conduct.  To plead of defamation, a plaintiff must allege facts, which, if true, show that the Defendant "published a 'false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss.'"  Salmon v. Lang, 57 4th 296, 319 (1st Cir. 2022) (quoting Zeigler v. Rater, 939 F.3d 385, 392 (1st Cir. 2019)).  Dolloff's alleged conduct of making false disciplinary reports does not rise to the level of defamation.  In addition, a government act of defamation does not deprive a person "of any 'liberty' protected by the procedural guarantees of the fourteenth Amendment." Paul v. Davis, 424 U.S. 693, 712 (1976).

Further, the filing of a false disciplinary report against an inmate is not in and of itself actionable.  See, e.g., Gay v. Shannon, 211 Fed. App'x 113, 116 (3d Cir. 2006) (per curiam); Asad v. Bush, 170 Fed. App'x 668, 672 (11th Cir. 2006) (per curiam); Jackson v. Madery, 158 Fed. App'x 656, 662 (6th Cir. 2005), abrogated on other grounds by Maben v. Thalen, 887 F.3d 252 (6th Cir. 2018).

Accordingly, this claim will be **DISMISSED**.

### G.      Other Violations (¶¶ 47-51)

The allegations under the title "Other Violations" concern issues with Cortez's personal property arising from his transfer from MCI Cedar Junction to the Donald W. Wyatt Detention Facility in June 2021.  According to the Complaint and exhibits thereto, Cortez was moved to the Limited Privilege Unit ("LPU") of MCI Cedar Junction on June 3, 2021 to await the transfer and arrived at the Wyatt Detention Center no later than July 15, 2023.[3]  He claims that, during this period in the LPU, he did not have access to his personal property, including legal materials and items he has purchased through the prison commissary.  Cortez also alleges that most of his personal property from MCI Cedar Junction never arrived at the Wyatt Detention Center.

Cortez's allegations concerning lack of access to or loss of personal property fail to state a claim for a violation of a constitutional right.  It is well-established that an official's unauthorized and unforeseen taking of property does not constitute a violation of the Due Process Clause "until and unless [the State] refuses to provide a suitable postdeprivation remedy."  Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Parratt v. Taylor, 451 U.S. 527

---

[3] In one paragraph of the Complaint, Cortez represents that he was moved to the LPU on June 3, 2020.  Compl. at ¶ 47.  The year appears to be an error because, as other paragraphs of the Complaint infer that he was moved to the LPU in June 2021, not June 2020.  Cortez attached to the Complaint a grievance in which he stated he was moved to the LPU on June 3, 2021.  [Dkt. 1-14 at 14].

9

(1981); Zinermon v. Burch, 494 U.S. 113, 125 (1990); Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992).  Here, Cortez does not allege, and the Court cannot reasonably infer from the Complaint, that he did not have a suitable state court remedy against DeMoura to challenge the lack of access to or loss of his personal property.

In addition, Cortez's allegations in the "Other Violations" section concerning the unsuccessful purchase of a tablet and his request for inmate clothing, Compl. at ¶¶ 48, 51, do not set forth claims upon which relief may be granted.

Accordingly, all claims in the "Other Violations" section of the Complaint will be **DISMISSED**.

### III.   CONCLUSION

For the reasons set forth above, the Court hereby orders:

1. The claim for "Legal Mail Violations" shall go forward as to Defendant Dumernay, but shall be **DISMISSED** as to Defendants DeMoura and Hockert-Lotz.

2. The claim for Attorney Client Communication Violations shall go forward against Defendant Ladd.

3. All other claims shall be **DISMISSED** and all Defendants except for Dumernay and Ladd shall be terminated as parties to this action.

4. The clerk shall issue summonses for Dumernay and Ladd.  Cortez must serve each of these Defendants with a summons, the Complaint, and this order.  Service must be completed in accordance with Rule 4 of the Federal Rules of Civil Procedure and within 90 days of the date the summonses issue.  Failure to complete service in a timely fashion may result in dismissal of the action without prior notice to the plaintiff.  See Fed R. Civ. P. 4(m); Local Rule 4.1 (D. Mass.)

5.  If Cortez wants the Court to consider his eligibility to have the United States Marshals Service complete service at government expense, he must file an appropriate motion accompanied by a prison account statement covering the six months preceding the date of this order.

**SO ORDERED.**

Dated:  October 17, 2023                                /s/Angel Kelley
                                                        Hon. Angel Kelley
                                                        United States District Judge