**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAMIEN CORTEZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    Civil Action No. 1:23-CV-10051-AK |
| | ) |
| JENNIFER LADD, MITCHEL | ) |
| DUMERNAY | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Damien Cortez ("Cortez"), an inmate who was previously in custody at Massachusetts Correctional Institution at Cedar Junction ("MCI-CJ"), brings this action against Defendants Jennifer Ladd ("Ladd") and Mitchel Dumernay ("Dumernay"), employees of MCI-CJ, in their individual and official capacities, alleging violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. The Defendants filed a Motion to Dismiss all claims [Dkt. 64], which Cortez opposes [Dkt. 79]. For the reasons set forth below, the Defendants' Motion to Dismiss [Dkt. 64] is **GRANTED**.

**I.    BACKGROUND**

The following facts are drawn from the Complaint and are taken as true for purposes of this memorandum. [Dkt. 1]. Cortez, a pro se litigant, filed suit alleging multiple constitutional violations against Defendants, who are staff members at MCI-CJ. He sues the Defendants in both their individual and official capacities, claiming that they interfered with his legal mail and attorney-client communications. The facts central to these claims are as follows.

Cortez was an inmate at MCI-CJ. [Dkt. 1 ¶ 3].  Defendant Dumernay is a correctional officer at MCI-CJ who serves as the Inmate Grievance Coordinator ("IGC") and Inner Perimeter Security Officer ("IPS"). [Id. ¶ 11].  Defendant Ladd is a Supervising Case Manager at MCI-CJ. [Id. ¶ 12].

Cortez alleges that, on or around October 30, 2020, while distributing Cortez's legal mail, Dumernay stated, "watch and see if you get any more legal mail in the future." [Id. ¶ 30].  In response, Cortez requested that Dumernay no longer deliver his legal mail. [Id. ¶ 33].  This request was denied by the Assistant Superintendent of MCI-CJ. [Id. ¶ 33].

On November 10, 2020, Cortez's attorney, Henry Fasoldt, sent him a flash drive containing discovery materials related to his criminal case. [Dkt. 1-8 at 5].  The letter was opened in Cortez's presence, Cortez signed the legal mail logbook, and Department of Corrections ("DOC") staff told Cortez that the included flash drive would be in the law library. Id. at 15].  On November 12, 2020, Cortez received a Contraband Notice regarding the flash drive's confiscation. [Dkt. 1 ¶ 31].  Cortez alleges that when he informed Attorney Fasoldt about the flash drive being confiscated as contraband, Fasoldt told Cortez that he would address the issue and ensure the discovery was received by Cortez. [Dkt. 1-8 at 15].  On January 11, 2021, eight discovery discs containing the same discovery information were mailed to the MCI-CJ Superintendent from the U.S. Attorney's Office. [Id. at 6].

On or about April 30, 2021, a prison law librarian informed Cortez that eight discovery discs from his attorney were in the law library. [Dkt. 1 ¶ 32].  Cortez alleges that the letter containing the discs, sent by the U.S. Attorney's Office, was legal mail that had been opened without him present. [Id.].  He further claims that he was not notified about the discs until three months after their receipt by MCI-CJ. [Id.].

2

Cortez also asserts that he was unable to have a scheduled call with his attorney. Of note, during the Covid-19 pandemic, the prison allowed inmates to schedule attorney calls to mitigate virus spread. [Id. ¶ 37]. Ladd was responsible for scheduling these calls. [Id.]. And in February 2021, Ladd denied Cortez's request for a scheduled call with his attorney. [Id. ¶¶ 37-38]. Although the requested call time was denied, Cortez was able to call his attorney that same day. [Id. ¶ 38].

This action was initially filed against twelve MCI-CJ employees for alleged constitutional violations, including denial of access to the prison law library, interference with legal mail, failure to provide meals consistent with Cortez's religious diet, violation of attorney-client communications, noncompliance with the prison grievance procedure, slander/defamation of character, and other claims. [Dkt. 1]. On October 17, 2023, the Court dismissed all claims, except those against Ladd and Dumernay, under 28 U.S.C. § 1915A. Section 1915A authorizes the Court to review, "as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. The Court may dismiss any portion of the complaint that fails to state a claim, is frivolous, malicious, or seeks monetary relief from an immune defendant. Id.

The remaining claims concern alleged constitutional violations related to legal mail interference and attorney-client communication. The Court addresses each in turn.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court

3

must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

For cases involving pro se plaintiffs, complaints must be liberally construed and may only be dismissed for a failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 596 (1972)).

## III. DISCUSSION

### A. Section 1983 Claims in Official Capacity

Cortez brings claims against Ladd and Dumernay in both their individual and official capacities under 42 U.S. Code § 1983 ("Section 1983"). Section 1983 provides that "[e]very person" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" who subjects or causes to subject someone "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party. 42 U.S.C. § 1983. An individual asserting a Section 1983 claim must show that the challenged conduct is "attributable to a person acting under color of state

4

law" and that the conduct was a "denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); see Graham v. Connor, 490 U.S. 386, 393-94 (1989) (explaining that Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred'") (quoting Baker v. McCollan, 443 U.S. 137, 144 (1979)).

Section 1983 allows for persons acting under state law to be sued in their official capacity. See Felton v. Lincoln, 429 F. Supp. 2d 226, 239 (D. Mass. 2006).  Official capacity claims, "generally represent only another way of pleading an action against an entity of which an officer is an agent," and is therefore "treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)).  Because officials may not be sued in their official capacities for monetary damages, Cortez's Section 1983 claim fails. Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 700 (1st Cir. 1995) (quoting Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)) ("[I]t is well settled 'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.'").  Here, Cortez is seeking nominal, punitive, and compensatory damages for claims against Defendants while acting in their official capacities.  Thus, the claims fail as a matter of law and the Motion to Dismiss is **GRANTED** regarding the claims against Defendants in their official capacities.  The Court now addresses the Section 1983 claims against Defendants in their individual capacities.

### B. Legal Mail Claims

Cortez asserts several claims against Dumernay regarding purported unlawful interference with his legal mail.  Cortez alleges that these interferences violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  The alleged interferences include one instance

5

where DOC staff confiscated a flash drive as contraband sent by Cortez's attorney and another instance where DOC staff allegedly opened Cortez's legal mail outside of his presence. The Court addresses each instance consecutively.

### 1.    Discovery Flash Drive

On November 10, 2020, Cortez's attorney, Henry Fasoldt, mailed him a letter with a flash drive containing discovery for his criminal case. [Dkt. 1-8 at 5]. The letter was provided to Cortez, opened in his presence, and the flash drive was taken by DOC staff to the law library. [Id. at 14]. On or around November 12, 2020, Cortez received a Contraband Notice informing him that the flash drive had been seized as contraband. [Id. at 2-3]. Cortez alleges that DOC staff's seizure of the flash drive as contraband violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

An inmate's incoming privileged mail may be opened by DOC staff and inspected for contraband if the inspection takes place in the presence of the addressee inmate. 103 Mass. Code Regs. 481.11 (2022). The Code of Massachusetts Regulations ("CMR") defines contraband as "[a]ny item(s) not approved for inmate retention at an institution." 103 Mass. Code Regs. 403.05. Approved inmate property is outlined in 403.10, which states in relevant part that all audio-visual legal materials must be kept in the law library. See 103 Mass. Code Regs. 403.10. The regulations also state that "[a] master list of items approved for retention . . . shall be posted and available in each inmate library." Id.

Courts give deference to DOC officials in "regulat[ing] the relations between prisoners and the outside world." See Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); see also Janis v. United States, No. 1:06-CV-1613, 2009 WL 564207, at *13 (S.D. Ind. Mar. 4, 2009) ("What objects are considered to be contraband is left to the sound discretion and judgment of the prison

administrators and their staff."); Latimore v. Tompkins, No. 14-13378, 2021 WL 5763011, at *16 (D. Mass. Dec. 3, 2021) (quoting Thornton v. Merchant, No. H-10-0616, 2011 WL 147929, at *10 (S.D. Tex. Jan. 18, 2011)) ("[P]rison officials may impose reasonable restrictions on the type and amount of personal property that inmates are allowed to possess while in prison."). Thus, DOC officials retain the ability to regulate according to their discretion.

While flash drives are not specifically listed in 103 Mass. Code Regs. 403, "flash drives were not allowed at MCI CJ" at the time of the confiscation. [See Dkt. 65 at 6]. Bearing in mind the discretion given to DOC officials to determine what reasonable restrictions may be imposed on inmate property, the confiscation of the flash drive was conducted according to policy—the letter was opened in Cortez's presence, and he was promptly notified of the confiscation via the Contraband Notice Form. [See Dkt. 1-8 at 2-3]. Moreover, Cortez was not permanently deprived of the information contained in the flash drive. His attorney was able to have the information sent to him through CDs—a method that was not considered contraband—shortly after the confiscation. For the foregoing reasons, Cortez fails to state any constitutional claim related to the confiscation of the flash drive. Accordingly, these claims are **DISMISSED.**

### 2.     January 11, 2021, Letter

Cortez additionally argues that the January 11, 2021, letter received from the U.S. Attorney's Office, containing the discovery CDs, was his legal mail. He claims that prison staff opened it outside his presence, violating his constitutional rights.

Under the CMR, incoming privileged mail may be opened only in the inmate's presence, and solely to check for contraband. See 103 Mass. Code Regs. 948.06. Here, however, the letter was addressed to the prison Superintendent, not Cortez. [See Dkt. 1-8 at 6]. There is no evidence here of any labels or markings indicating that the letter was privileged or legal mail and, because

it was addressed to the Superintendent and not Cortez, it did not qualify as such.  The letter also requested that the Superintendent provide the enclosed discovery to Cortez. [See Dkt. 1-8 at 6]. These details were inside the letter, meaning that the Superintendent would not have known it pertained to Cortez until it was opened.  It is also undisputed that officials at MCI-CJ provided the discovery to Cortez.

Moreover, the Court is not aware of any precedent holding that a letter addressed to a prison Superintendent containing discovery for an inmate constitutes legal mail.  Courts in the First Circuit have found that not all mail from a legal source is constitutionally protected as legal mail. See Ash-Shaheed v. FCI Berlin, No. 21-CV-227-LM, 2021 WL 1795636, at *1 (D.N.H. Mar. 26, 2021), report and recommendation approved, 2021 WL 1784806 (D.N.H. May 5, 2021). In Ash-Shaheed, the court explained that mail from a court may not implicate the same constitutional concerns as mail from an attorney because it does not affect an inmate's access to courts or their attorney-client relationship. Id.

Here, the mail is comparable to mail from a court: it originated from the U.S. Attorney's Office, contained criminal discovery, and was addressed to the Superintendent not Cortez. Without markings designating it as legal mail, it cannot be treated as such.  Consequently, there was no requirement that Cortez be present when the letter was opened, and the prison's handling of non-legal mail did not violate the Constitution.  Accordingly, Cortez's claims regarding the January 11, 2021, incident are **DISMISSED**.

### C.  Delay in Access to Discovery

Cortez alleges that his Fifth, Eighth, and Fourteenth Amendment rights were violated because he was denied access to discovery discs for three months.  Defendants counter that the discs were available in the prison's law library and that Cortez's constitutional rights were not

violated merely because he was unaware of them.

The Court interprets Cortez's allegations as a deprivation of property claim under the Fourteenth Amendment.  In Hudson v. Palmer, the Supreme Court held that neither negligent nor intentional deprivation of a prison inmate's property by state officials violates the Due Process Clause of the Fourteenth Amendment if an adequate post-deprivation state remedy exists. 468 U.S. 517, 536 (1981); see also Latimore, 2021 WL 5763011, at *36 ("[M]ultiple decisions by District Courts in the First Circuit apply the Parratt-Hudson doctrine to lost or stolen inmate property and conclude that sufficient due process is afforded by an adequate post-deprivation remedy in the form of a state law claim for conversion or administrative remedies.").

Here, Cortez has several post-deprivation remedies available to him, such as claims in tort for conversion or trespass to chattels.  Because an adequate state remedy exists, Cortez's Fourteenth Amendment Due Process rights have not been violated.  Moreover, because the CDs were neither lost nor stolen, this is not a deprivation of property claim.  Rather, Cortez's claim concerns the prison's failure to notify him of the arrival of the CDs, which is more appropriately analyzed as a denial of access to the courts.

Prisoners have a constitutional right of access to the courts, which includes access to a law library or a comparable resource "to assist inmates in the preparation and filing of meaningful legal papers." Bounds v. Smith, 430 U.S. 817, 828 (1977).  A denial-of-access to the courts claim requires a showing of "actual injury," meaning that the prison's actions must have hindered the inmate's ability to pursue a nonfrivolous legal claim. Lewis v. Casey, 518 U.S. 343, 351 (1996); Doiron v. Edmark, No. 16-CV-326, 2016 WL 7353908, at *4 (D.N.H. Oct. 26, 2016).  However, a mere delay in receiving legal materials does not rise to the level of a constitutional violation. See Thomas v. Barnstable Cnty. Corr. Facility, No. 21-CV-10398, 2023

WL 4686052, at *12 (D. Mass. July 21, 2023) (holding that delay in receiving attorney mail alone does not establish denial of access to courts); Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (stating that a "mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation") (quoting Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

Cortez alleges only that the delay "impeded [his] criminal defense," [see Dkt. 79 ¶ 17], without identifying any specific injury.  However, because he has not demonstrated actual harm and the law does not recognize a constitutional violation for mere delay, this claim is **DISMISSED**.

### D. Denial of Scheduled Attorney Calls

Cortez alleges that Ladd violated his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments by refusing to schedule calls with his attorney.  Defendants respond that Cortez had no constitutional right to scheduled calls at a specific time, and that he was still able to communicate with his attorney even if the calls were unscheduled.  The Court agrees.

While prisoners do have a right to access counsel, that right does not exist on their own terms. See Francisco v. U.S. Marshalls Service, No. 11-231L, 2014 WL 652147, at *9 (D.R.I. Feb. 19, 2014) (finding no denial of access to counsel where "[c]omplaint merely describes Plaintiff's frustration with being unable to reach his attorney at specific moments"); Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997) ("As a prison inmate, Gilday can identify no federal or state right—constitutional or otherwise—to utilize a prison phone on his own terms.").

Here, there is no indication that Cortez suffered any delay in communicating with his attorney based on Ladd's denial of a scheduled call.  In fact, Cortez was able to speak with his attorney on the same day that he had requested a scheduled call. [See Dkt. 1 ¶ 38].  Cortez

continued to have access to a phone where he could call his attorney, as was normal practice before scheduled calls became permitted during the Covid-19 pandemic.  For these reasons, Cortez fails to state any constitutional violation here.  Thus, his claims surrounding the scheduled attorney call are **DISMISSED.**

### E.  Qualified Immunity

Defendants argue that even if the Court were to find valid constitutional claims, the Defendants would have qualified immunity as public officials acting in line with the policies put in place. [Dkt. 65 at 10-11].  Qualified immunity shields government agents from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305 (1996).  Qualified immunity does not apply to government employees if (1) there is a violation of a constitutional right and (2) that constitutional right was clearly established at the time of the defendant's alleged violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  However, because the Court has not found any legitimate constitutional claims, the Court need not address qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss [Dkt. 64] is **GRANTED**.  Plaintiff's Complaint is **DISMISSED**.

**SO ORDERED.**

Dated:  August 3, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge

11